UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X

TYLIK WILLIAMS a/k/a VICTOR RAMOS,

     Petitioner,

 -against-          05 CV 545 (SJF)

GARY GREENE, Superintendent,    **OPINION & ORDER**
Great Meadow Correctional Facility,

     Respondent.
------------------------------------X

FEUERSTEIN, J.

  Petitioner *pro se* Tylik Williams ("petitioner" or "Williams") brings this proceeding pursuant to 28 U.S.C. § 2254 for a writ of habeas corpus. For the reasons stated below, Williams's petition for habeas corpus is denied and dismissed.

I. Factual Background

  A. The Jury Trial

  Milton Rodriguez ("Rodriguez") testified that he lived with the victim, Charles Woods ("Woods"), in public housing at 417 Baltic Street, apartment 14B, in Brooklyn, New York. (Trial Transcript ["TT"], at 562). Woods kept a safe in the living room closet. (Id. at 571). At approximately 2:00 p.m. on February 5, 2001, Rodriguez left the apartment to go to work. (Id. at 563). Before leaving the building, Rodriguez used his mailbox key to get his mail in the lobby and saw four men who were there every day, including petitioner. (Id. at 564-66). Rodriguez had a short conversation with the men and then left for work. (Id. at 565-66). He was later

1

unable to find his keys, including his mail, house and work keys. (Id. at 568).

Christian Perez ("Perez") testified that he lived in the same apartment building and awoke at 12:30 p.m. on February 5, 2001. (Id. at 638-39). While Perez was watching television, petitioner knocked on his door and asked if he could call his friend Steven Miller, who was also known as "Sha." (Id. at 639). Petitioner carried a set of keys in his hand which he placed on the kitchen table. (Id.). Perez overheard petitioner state on the phone that he (petitioner) "had the keys from the faggot nigger from the 14th floor." (Id.). Following the phone call, petitioner took the keys and left the apartment. (Id. at 648). Shortly thereafter, Perez left the apartment and returned at approximately 3:45 p.m. (Id. at 649).

At approximately 4:00 p.m. on February 5, 2001, Bonita Middleton ("Middleton"), a tenant who lived in an apartment located next to the lobby, encountered petitioner and his companions in the lobby of the building as she returned from picking up her son at day care. (Id. at 929). At approximately 4:15 p.m., Grace Cook ("Cook") was on the telephone in her apartment on the fourteenth floor of the same building when she heard what sounded like a firecracker. (Id. at 543-44). Cook then heard somebody say, "give me your money," to which she heard Woods respond, "I don't have no money. I told you, I don't have no money." (Id. at 545). Cook then peered through the peephole and saw someone in a "big white coat" and another "shadow." (Id. at 546, 548). Cook waited a few minutes and then knocked and entered Woods's apartment and saw that he was shot in the chest. (Id. at 550). Woods later died at the hospital.

Perez was watching television when "Sha", holding a black gun on his waist and appearing "very nervous," entered Perez's apartment and told Perez that he had just "hit

2

somebody." (Id. at 652-53). Sha was wearing a black ski mask pushed up on his forehead and leather gloves. (Id. at 653). Immediately thereafter, petitioner entered the apartment, also wearing a ski mask and gloves, and locked the door. (Id. at 655). Sha asked petitioner whether he had wiped his fingerprints and petitioner replied, "Yeah. I was going for the safe." (Id. at 657). Perez also overheard them say "[n]obody was supposed to be there." (Id. at 662). Perez then asked Sha and petitioner to leave. Prior to leaving, they told Perez to "say nothing" and "keep [his] mouth shut." (Id. at 659).

Following their departure, Perez noticed that they had left the set of keys on the table; Perez placed the keys in a paper bag and threw them out his window to avoid being connected with the incident. (Id. at 659-60). Thereafter, Perez refrained from talking to the police and remained in his apartment for three days out of fear that he would be mistakenly considered a suspect in the case. (Id. at 695). Perez gradually disclosed what he knew about the incident during several interviews with the case detectives.

On February 6, 2001, Middleton overheard petitioner bragging in the lobby that "we had to blast that nigger." (Id. at 932-34). Petitioner initially maintained his innocence, but ultimately admitted to detectives that he was present at the scene and signed a statement to this effect. (Id. at 768). He told Detective Tannazzo that he had taken the keys that Rodriguez had mistakenly left in the mailbox, that he had acted as the lookout while Miller and an unnamed accomplice entered Woods's apartment, and that he went downstairs after he heard one gunshot inside the apartment. (Id. at 768, 776).

At trial, petitioner testified that at the time of the crime, he was with Sha (or Miller) in Manhattan. (Id. at 981). He alleged that the oral and written statements that he had given to the

3

detectives were false and coerced. (Id. at 986-91, 1018-24). He also denied taking the keys out of Rodriguez's mailbox on February 5 or seeing the keys at all that day. (Id. at 992-93).

II. Procedural History

On December 4, 2001, petitioner was convicted by the jury of one (1) count of Felony-Murder (N.Y. Penal Law § 125.25[3]). On December 17, 2001, the trial court sentenced petitioner to a term of imprisonment of twenty-five years to life.

During the charge conference, the trial judge found "no evidence that [Perez] took part in any burglary, attempted robbery, or murder of [Woods]" and declined to give an accomplice charge. (TT at 1057). On appeal, counsel's sole argument was that the trial court erred by failing to instruct the jury that a prosecution witness, Christian Perez, could be considered an accomplice as a matter of fact, whose testimony required corroboration. On December 22, 2003, the Appellate Division unanimously affirmed petitioner's conviction. People v. Williams, 2 A.D.3d 760, 769 N.Y.S.2d 797 (2d Dep't 2003). The court held that, "the subject witness was, at most, an 'accessory after the fact,' whose testimony needs no corroboration under CPL 60.22." Id. at 761 (quoting People v. Dygert, 229 A.D.2d 735, 736, 645 N.Y.S.2d 902 (1996); People v. Sacco, 199 A.D.2d 288, 289, 604 N.Y.S.2d 971 (1993)). As such, the court found that "an accomplice corroboration charge would not have been warranted." Id. (citations omitted).

The New York Court of Appeals denied leave to appeal on March 26, 2004. People v. Williams, 2 N.Y.3d 745, 810 N.E.2d 923, 778 N.Y.S.2d 470 (2004).

III. Current Petition

In petitioner's current application, he alleges that he was deprived of his right to a fair trial due to the trial court's refusal to instruct the jury that Christian Perez could be considered an

4

accomplice whose testimony had to be corroborated. (See Petition, filed Jan. 24, 2005 ["Petition"]).

IV. Discussion

    A. Jurisdictional Requirements

In enacting the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Congress established a one-year period of limitations for the filing of an application for a writ of habeas corpus by a person in custody pursuant to a State court judgment. See 28 U.S.C. §2244(d)(1). In Lindh v. Murphy, 521 U.S. 320 (1997), the Supreme Court held that AEDPA, which imposes a one-year statute of limitations on habeas corpus petitions, applies prospectively to "the general run of habeas cases" that are "filed after the date of the Act." Lindh, 521 U.S. at 327; see also Boria v. Keane 90 F.3d 36, 37-38 (2d Cir. 1996) (per curiam). AEDPA states in pertinent part:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of - (A) the date on which judgment became final by the conclusion of direct review or the expiration of the time for seeking such review.

28 U.S.C. § 2244(d)(1). Williams filed his petition on January 24, 2005, well after the effective date of the Act. According to Lindh, AEDPA's provisions, including the one (1) year statute of limitations, apply to his petition. Thus, to determine whether the petition is timely under the provisions of the Act, the court must calculate one (1) year from the latest of the dates provided for in 28 U.S.C. § 2244(d). A conviction becomes "final" under AEDPA when the highest state court concludes its direct review or when the time to seek direct review in the United States

Supreme Court by writ of certiorari expires (which is ninety (90) days after entry of the judgment of conviction or of the order denying discretionary review). See Williams v. Artuz, 237 F.3d 147, 151 (2d Cir. 2001). The Court of Appeals denied leave to appeal on March 26, 2004; thus, Williams's conviction became "final" ninety (90) days later, on June 24, 2004. Williams filed his petition on January 24, 2005, well within the one-year statutory period. The petition is therefore timely.

    B.    Standard

When the state court has rejected the petitioner's claim on the merits, a federal court considering a habeas corpus petition under 28 U.S.C. § 2254, as amended by AEDPA, must defer to the state court's rejection of the claim, and must deny the writ unless the state-court adjudication (1) "was contrary to," or (2) "involved an unreasonable application of," clearly established federal law "as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Williams v. Taylor, 529 U.S. 362, 367 (2000); Henry v. Poole, 409 F.3d 48, 67 (2d Cir. 2005). In this case, the Appellate Division explicitly stated that Perez was, at most, an accessory after the fact whose testimony did not need corroboration. Therefore, the deferential standard of AEDPA applies to a review of this claim.

In Williams, the Court held that "under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." 529 U.S. at 413. The Second Circuit has concluded that an "objectively unreasonable" application of Supreme Court precedent falls somewhere between "merely erroneous and unreasonable to all reasonable jurists." Francis S. v. Stone, 221 F.3d 100, 109 (2d

6

Cir. 2000). A state court decision is "contrary to" clearly established federal law "if the state court applies a rule that contradicts the governing law set forth" in Supreme Court precedent or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives" at a different conclusion. Williams, 529 U.S. at 405. "If, after carefully weighing all the reasons for accepting a state court's judgment, a federal court is convinced that a prisoner's custody . . . violates the Constitution, that independent judgment should prevail." Id. at 389.

C. Application

New York Criminal Procedure Law § 60.22(1) provides that "[a] defendant may not be convicted of any offense upon the testimony of an accomplice unsupported by corroborative evidence tending to connect the defendant with the commission of such offense." Under the same section, an accomplice is defined as "a witness in a criminal action who, according to evidence adduced in such action, may reasonably be considered to have participated in: (a) the offense charged; or (b) an offense based upon the same or some of the same facts or conduct which constitute the offense charged." N.Y. C.P.L. § 60.22(2). In contrast to New York law however, "the Federal Constitution does not prohibit the conviction of a defendant based on the uncorroborated testimony of an accomplice. . . . [so long as] the accomplice's testimony is credible." Gaiter v. Lord, 917 F. Supp. 145, 150 (E.D.N.Y. 1996). See also Caminetti v. United States, 242 U.S. 470, 495 (1917) ("there is no absolute rule of law preventing convictions on the testimony of accomplices if juries believe them"). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

The jury found Perez's testimony credible and the trial judge found that he was not an accomplice to the murder. The evidence was insufficient to establish that Perez participated in the offense charged or an offense based upon the same or some of the same facts or conduct that constituted the offense charged. There was no evidence that Perez knew of any plan to burglarize Woods's apartment and none of the petitioner's statements to the police implicated Perez in the planning of the burglary or in the actual attempted robbery and murder of Woods. Although petitioner entered Perez's apartment prior to the murder, Perez was not apprised of petitioner's plan to burglarize Woods's apartment. Even if Perez had been aware of such a plan, an accomplice charge would still not have been warranted. See People v. Young, 235 A.D.2d 441, 443, 653 N.Y.S.2d 124 (2d Dep't 1997) ("The mere fact that the defendant may have informed the witness of his desire to kill the victim does not make her a participant in the crime for the purposes of C.P.L. § 60.22.").

Assuming Perez could be viewed as an accessory after the fact based upon ridding himself of Woods's keys, an accomplice corroboration charge would still not be warranted. Dygert, 229 A.D.2d at 736. Moreover, because there was overwhelming evidence of petitioner's guilt, a mistake in the accomplice charge would not constitute reversible error.

In sum, petitioner's claim of error is not predicated on a claim of a violation of federal law, and in any event, the evidence was insufficient to establish that Perez participated in the offense charged. The Appellate Division's decision was not "contrary to" or "unreasonable application of" clearly established federal law.

V. Conclusion

For the reasons stated above, Williams's petition for a writ of habeas corpus is denied and

dismissed. No certificate of appealability is granted with respect to petitioner's claim because the petitioner failed to make a substantial showing of any denial of his constitutional rights. See 28 U.S.C. § 2253.

SO ORDERED.

_____
SANDRA J. FEUERSTEIN
United States District Judge

Dated: January 18, 2007
Brooklyn, NY

Copies to:

New York State Attorney General's Office
120 Broadway, 22nd Floor
New York, NY 10271

Phllis Mintz
District Attorney of Kings County
350 Jay Street
Brooklyn, NY 11201

Tylik Williams
02A0114
Great Meadow Corr. Fac.
PO Box 51
Comstock, NY 12821-0031